The next case for argument is Geneva Rock Products v. QBE Insurance Company, Docket 25-4105. Counsel, please proceed when you're ready. Thank you. Alan Bradshaw on behalf of Geneva Rock Products. The District Court's interpretation of the insurance policy at issue here, as well as the governing provisions of the Utah Insurance Code, there are two, was incorrect as a matter of law. The District Court concluded that under the Policies Express Notice Prejudice Rule, as well as the Statutory Notice Prejudice Rule, that those rules have no application to all claims made policies, including claims made policies and claims made and reported policies, which are two entirely different things. Claims made policy is a policy that requires one thing in order to trigger enforced coverage, and that is the claim be made during the period of insurance. Claims made and reported policies require two things, that the claim be made during the policy period and that it also be reported during the policy period. The scope of coverage covered by those is vastly different. As an example, a claims made policy for a law firm that has had coverage for 30 years is going to be broader than even an occurrence triggered policy because the conduct that is governed goes back 30 years of when the policy was first issued. And what happened is that the District Court was, I think, misled by QBE's arguments because the District Court did not engage with respect to the statutory exception here, which is 31A.22.203. And there is no way to reconcile the provisions of that exception to the notice prejudice rule with this insurance policy. Let me talk about the first sentence of 31A.22.203. It says, Section 31A.21.312 applies to the notice required under liability policies. Plain, explicit, all policies. Claims made policies, claims made and reported policies, occurrence policies, every policy is subject to 31A.21.312. 312 has two subparts. Subpart 1 is a provision that says all insurance policies in Utah, and that includes liability policies, property policies, every type of policy, must have a notice provision that says if there is a reason notice wasn't provided on time and that excuse is offered and notice is provided as soon as reasonably practicable, then that must be considered timely. That's the subject of subpart 1. It's deemed timely notices. Subpart 2 is the notice prejudice rule. And so it's important to distinguish between those. And it's dealing with a different subject matter. Subpart 1 deals with deemed timely notices. Subpart 2 deals with untimely notices, all of which are subject to the notice prejudice rule. And then we go on looking at the exception. It says subsection 31A.21.312.1. So in other words, the part of the statute that addresses notices deemed to be timely may not be construed to extend the normal provisions of any claims made coverage that required notice of an occurrence or claim prior to expiration of the policy for coverage to be enforced. There are two fundamental ways in which that language is not met here. Most importantly, a policy, a claims made policy, which no one has ever argued this is not a claims made policy. It is. And the district court, when it said that our argument was that it wasn't a claims made policy because of a 60-day grace period, is a complete mischaracterization and a lack of understanding that was precipitated by QBE not engaging under section 203. And this does not meet the language because it does not require notice for coverage to be enforced at all. It only requires that the claim be made. A policy that requires notice, I mean, it does have a notice requirement that's 60 days post the policy period. That is an additional, however, sentence within the reporting provisions. But it is not, and it is applicable in only one circumstance, which is non-renewal. In every other circumstance, it's not applicable. And I will address how that can be read in the policy consistent with the insurance code, but that language does not meet this requirement because the policy requires that notice be made for the coverage to be enforced. That's a claims made and reported policy. And here's what those look like. We have those in the record. QBE wrote those in Utah. They wrote, they have big notices on the very first page that says this is a claims made and reported policy. You must both have the claim occur during the policy period and you must report in order to have coverage. We put in the record the employment practices liability policies that they issued that say exactly that. In the insuring clause of an ELP policy that's claims made and reported, it says you must have, the claim must be made during the policy period and it must be reported to trigger coverage. None of that exists in this policy. So indulge me in this. What if the language instead of having the 60-day lag said, however, under no circumstances, I'm paraphrasing slightly, however, under no circumstances should a claim be reported after the policy period? Would that count? Would that be a claim and reported policy under your view? It would not be because by definition what a claims made and reported policy is one that provides notice that it's both, that has in its insuring clause that it requires both to have enforced coverage. A separate notice provision that says you should provide notice by this particular period of time is not a claim. It's a summary of claims made and reported policy. And what's important to understand is the however paragraph that they rely upon, it's, what they argue is it's the juxtaposition of that sentence is immediately adjacent to the notice prejudice standard. And they argue that for that reason it modifies notice prejudice. The problem with that is twofold. Number one, the subject of the qualification of however 60 days in context can mean nothing more than a timely notice. In other words, the subject matter that's being addressed is in a non-renewal situation, you need to provide notice as soon as timely. But we're going to tell you that in non-renewal, that has to be before the 60th day. It does not address notice prejudice in a, with respect to a, it does not address notice prejudice with respect to untimely notices, which are an entirely separate subject matter. Because in your view, if I understand you, an untimely notice then is subject to the prejudice inquiry. Timely notice, there is no need. I'm talking about untimely notice. Untimely notice is, the Utah statute is clear. It puts the burden on the insurance company. It says if you can prove prejudice because it was untimely, then you win. And here, granted, we have a long period of time. We have a couple of years. But the fact is, is that after complete and full discovery, they weren't able to prove a single item of prejudice. And the reason for that is pretty straightforward. This notice was provided to the wrong carrier. The carrier came in. In fact, QBE benefited because it got the benefit of another insurance company paying hundreds of thousands of dollars to defend very contentious litigation. And after complete and full discovery, we asked if they could identify any way in which the case should have been defended differently, if there was any prejudice. They couldn't define any of it. And they came back in their brief on appeal. But I understand. I saw you talked about the 30B6 depositions and such. But we don't have to decide. Even if we agreed with you, we don't have to decide the prejudice issue here today, do we? We are asking that the court, the order direct that summary judgment be granted in our favor. And the court has the authority to do that. And it is appropriate because we are at the end of fact discovery. And we have the J.R. Simplot case, which is a Utah case decided by this court. And it said summary judgment can be granted on damages if there's no disputed facts. And there are none. After complete fact discovery, Simplot also stands for the proposition that it's their burden to prove that some part of what was expended, $4.5 million through the date of partial summary judgment, was unreasonable. After fact, after expert discovery, they decided not to use an expert. There was no disputed fact that was presented to the court. And there are there's no dispute. So we believe that it is appropriate to remand and grant summary judgment in our favor with respect to that issue. And with that, I would reserve the remainder of my time. Andrew Margulies. Please the court. Andrew Margulies for Appellee QBE. A couple things I wanted to touch on. And one was the fallacy that there was some holding or some finding in an argument that all claims made policies are subject to the Utah statute. And that's not what we're saying here. There are different kinds of claims made policies. For example, a claims made policy may simply say you have to give notice as soon as reasonably possible, period, and nothing more. That's not a claims made policy that would trigger the statute because it doesn't have that extra time about we're going to cut off notice at a certain finite date. So that's not what we're talking about. This policy has that. As Judge Garcia, you noted, this policy has that language. However, in no event may notice be given more than six days. But only in the case of non-renewal. Correct. Only in the case of non-renewal. And that's what happened here. There was non-renewal. Now, if the policy is renewed and the insured remains an insured of QBE, QBE made the decision to allow that insured to then give notice while coverage is enforced after the policy is renewed. And that was certainly its right, and that's clearly spelled out in the policy. But where the coverage is not renewed and that entity is no longer insured, they give a cutoff date, 60 days after the policy period, and that's the end. Now — But that doesn't really line up with the language of 31A.22.203. Well — Which talks about notice of an occurrence of a claim prior to the expiration of the policy. And that's not what the language says here. That's correct. We don't have that. How does that line — it just doesn't seem to line up. Well, as the district court held, that granting of — The district court didn't try to line up the language. Well, what the district court held is the granting of that extra 60-day grace period doesn't change the fundamental nature of what this policy is. It has an end date that's specified in the policy. It's tied to the end of the policy period. But let me give — It didn't deal with that inconsistent language. But let me give this — That's my problem. Let me give this example, and I think this might clear it up. And what we — what this policy does is it gives the minimum protection required by the statute and then goes beyond that. Let's give this example. If an insured is sued on the last day of the policy and then gives notice the next day, that notice would be after the policy period. Even though they gave notice within one day, if the policy said notice has to be before expiration, that insured would have no coverage, because even though it was one day later, it's still after the policy period. That's the commercial reality that this policy recognizes, that sometimes there's a claim late in the policy period, and they need 60 days to get that notice to the insurance company. Why couldn't they just have another policy enforced by then? But here, the policy was non-renewed. They went to a different insurer. We're not the insurer anymore. That's what I'm saying. Because the claim would have been made in one policy period while that policy was in effect, and then the other insurance companies can say, well, it wasn't made during our policy period. We're not covering that. It was made during your prior policy period. And that's where it falls in. The insured would have no coverage, even though they gave notice one day later. So this recognizes the commercial reality that sometimes claims come in at the end of the policy period, and there needs to be some buffer to give that notice. That doesn't change the fundamental nature here. This policy, rather than just say notice as soon as possible and leave it at that, it gives an end date for cutoff. It's 60 days, and it's tied to the expiration of the policy. It just recognizes the reality. And there's a lot of claims made policies that do that because of that very situation. Now, counsel also made an argument in the briefs about what happens if an insured, there's a claim made on the last day of the policy period, but the insured doesn't know about it, and then it can't give notice. Well, that can't happen under this policy, because the policy specifically says a claim is not deemed made until the insured is served. So that takes into account the situation where a plaintiff files a lawsuit, say on the last day of the policy period. Federal rules, of course, gives it 120 days to serve it, and it doesn't get served until later. That's fine. It happens all the time with key TAM cases. Key TAM cases are filed under seal. An investigation goes on for years. They're not unsealed for years, and then they're served on the defendant. When that defendant gets served, that's when the claim is made. So you're never going to have that situation where an insured has a claim made against it, but doesn't know about it, so can't give notice. If it doesn't know about it, the claim hasn't been deemed made. Now, I also wanted to get in one point that the counsel made about notice given any time within that 60-day period, any time within the policy period is automatically deemed timely. That's not true. It's deemed timely if it's given as soon as practicable. For example, if an insured gets sued on the first day of the policy period, but doesn't give notice on the last day of the policy period, that's not as soon as practicable. That's not timely. It's mirroring the statutory requirements. No, but my point – that's right. And my point is it's not automatically deemed timely. It's just saying we can't rely on that untimeliness unless we're prejudiced. You wouldn't be allowed to do that regardless of whether the language was there because the statute precludes you from doing that. That's my point. Now, that's correct. I'm just saying it's not automatically deemed timely. It can still be untimely. We just can't use that untimeliness to deny coverage unless there's prejudice. So it's a nuance, but it's not just deemed timely. So I think that's the important thing to consider. And as your Honor, it's just good to see a U.S. counsel. What if they just said notice has to be given prior to the policy period? Would that be deemed a claims-made and reported policy? And counsel made an argument, well, it's not in the insuring agreement. It doesn't matter where in the policy it is, right? The policy has to be read as a whole. The policy has this conspicuous notice required by the statute saying this is a claims-made policy. The insuring agreement says claim has to be made during the policy period. And then there's a notice provision that deals with when notice has to be given. And this one gives a cutoff of 60 days after the end of the policy period. Let me ask you, the exception to the notice prejudice rule that's memorialized in the statutes, it applies to policies only that require notice prior to the expiration of the policy. That's not what your – that's not what the language of this particular policy has in it, because you have this 60-day continuation following expiration of the policy. So it doesn't seem like your policy fits squarely within this exception under the statutes. And that's the example I gave you before. It recognizes the commercial reality that if you give – if you have a policy that just says notice has to be given before the end of the policy period, it puts the insurer in a difficult place. If they get sued on the last day of the policy period, it's almost impossible for them to give notice. But you've given – you've drawn up policies that don't give the insurer that benefit, correct? I mean, there's some policies on the record that I think are strict claims-made and notice-requirement policies. There are policies out there. But I think what the counsel was pointing to, those policies still might have the 60-day tail provision. What counsel was just pointing out is the insuring agreement themselves also said it has to be reported during the policy period or during the time specified in the policy. But our position is you have to read the policy as a whole. And I think that this fits the statute because we give the minimum protection that the statute requires, that it has to say if it's as soon as practicable, we won't rely on late notice unless we're prejudiced. But then it also ties an end date to giving coverage that is specifically tied to the end of the policy period. The fact that it gives a 60-day grace period, it's the benefit of the insurer. It doesn't take anything away. If we tried to shorten the statutory period for notice, that might be an issue. But we're not. We're recognizing the commercial reality of saying we're going to give you 60 days. It is still tied to the expiration of the policy.  What if it said 1 year? Fisher. Excuse me? Kennedy. What if it said 1 year instead of 60 days? Fisher. It's hard to come up with a hypothetical because it doesn't. And, frankly, I've never seen a claims-made policy that had that generous of a grace period. They're usually 30 or 60 or 90 days. That's not the policy we have here. Ours is 60 days. It recognizes the realities of the situation. The problem that you have, it seems to me, and I understand the district court says, that it does not change the nature of the policy. It's a claims-made policy. But you run headlong into that statute. Aren't we supposed to enforce the words of the statute instead of this commercial convenience and necessity, whatever else? Well, I think you have to decide whether this policy conforms with what the statute is trying to protect and what the statute says. The statute says before the expiration of the policy period, we do give that, but we give them an extra 60 days. That's only to their benefit. So extra taxable in the reading, though. You'll concede that we're having to stretch the statute to accommodate the policy. The policy has that 60 days the statute does not provide for it. Yes, there's no dispute about that. The statute says what it says, and our policy says what it says. We believe we comply with what the statute requires by giving an extra amount of time. It is still tied to the expiration of the policy. Any time someone says the word giving in one of these insurance contacts, I kind of raise my eyebrows, because everything is paid for. In other words, the extra 60 days might be paid for. I understand that. But here, again, you have to think about the realities of the situation where if an insurer, it recognizes if an insurer is sued on the last day, it can't give notice that same day, the insurer would be out of coverage. It says we're going to give you that six days. It would be an argument here if they gave notice within that six-day period. They didn't give notice until almost three years later. So it's not a close call here. They knew what the statute was. They knew what the policy said. They knew when they had to give notice. They just didn't do it. And just to get in briefly to counsel's point about – Can I – I want to see if I can kind of fine-tune what you're arguing, because I want to compare what you're arguing to what the statute says. It says it may not be construed 31A, 21, 312, the general rule about late notice of prejudice and need for prejudice, can't be construed to extend the normal provisions of any claims-made coverage that requires notice of an occurrence of claim prior to the expiration policy. And as I read what your policy does, it requires notice of the – I'm sorry – notice of the occurrence of the claim in the case of non-renewal of the policy prior to the expiration of 60 days before the policy. So there's a lot of variation there between your policy and the language of the statute. And what the district court said is, well, one claims-made coverage policy is just like another, essentially. But I'm not even sure this is – this just doesn't meet that test in any way. But I think if you're talking about in the case of non-renewal, the language applies to non-renewal, because as an insurer's choice, if they renew the coverage, you'll never get into this issue, because the coverage remains in force and they can then give notice. The policy didn't expire. The coverage was extended, and therefore they still have coverage. So you don't get into that. It's only in the case of non-renewal where the coverage ends, then you're going to end the time to give notice. And, yes, it doesn't say prior to the expiration. It says within 60 days after the expiration. Our view is to – this would only be applicable in the case of a non-renewal. Every single one. In this policy, because if the coverage is renewed, then the coverage – It's not expired. Right. So the difference here is – okay. So the difference here is the notice of the occurrence of the claim is not prior to the expiration of the policy, but it's required prior to the expiration of 60 days after the policy. Correct. And it's a 60-day grace period that recognizes the commercial reality of giving notice. But it also is inconsistent with the language of the statute, which seems to be a very narrow exception. It doesn't just say any claims made coverage, which is seemingly what the district court said. It says any claims made coverage that required notice of an occurrence of a claim prior to the expiration of the policy. And our view is that the extra 60 days doesn't change the nature of the policy or of the statute. It complies with the minimum requirements of the statute. They're adding some language to the statute. And gives an extra period. I think it's consistent with what the statute – and you have to read it consistently with that. Now, on the issue of prejudice, just briefly, as counsel said, I believe there's ample evidence in the record to show that there was prejudice. But at the end of the day, as counsel asked them to have summary judgment granted in their favor, if the court were to go that way and say we're not finding compliance with statute, I still believe that ultimately whether there was prejudice is going to be a question of fact. There's ample evidence in there saying that there was prejudice. This is a 30B6 witness testified. They were deprived of the opportunity to respond to the EEOC notices where the EEOC has a conciliation process. They could come in and do something there. They weren't given an opportunity to control the defense, to hire counsel, to defend the case. Whether things would have been different, I don't know at the end of the day. But that's something that a jury has to decide. That's a trier fact, whether there was prejudice. We have ample evidence as to how we could have been prejudiced and how we were, but whether that ultimately led to prejudice, we believe that's a question of fact for the jury at the end. And there's no further questions? Thank you, Your Honor. Thank you, counsel. Thank you. I want to start right where counsel just left off with whether there's a question of fact with respect to prejudice. The testimony that we are referring to is at Appendix 1401. I was examining the 30B6 witness. We had already had answers to interrogatories, answers to a request for admissions. They had no prejudice they could identify. They had no issues with respect to the way that the cases were defended. And the answer I was given was I don't have enough information right now to identify whether we have material prejudice or not. The follow-up question I asked was, can you identify any theoretical or hypothetical prejudice associated with the Guzman claim? The answer is, I mean, I can speculate, if you want me to do that, sure. If we had been provided notice of the EEOC and then the quote that is quoted in the brief is, we could have settled. QBE put that in their opposition brief without telling the court the rest of what the testimony was, that it was 100 percent sheer speculation. There are no facts. There is no evidence of prejudice after the close of fact and expert discovery. I would like to the argument that you can almost comply with the Utah Insurance Code. Their favorite case, the Westport Insurance case versus Ray Quinney and Nebaker, footnote four, says, insurance policies which contain any provisions not in compliance with the Utah Insurance Code are construed and applied as if they were in full compliance, citing 31A21-107-2. It's strict. They have to meet it. They don't meet it. As the court noted, the policy says 60 days after expiration. The statute says prior to expiration. Last point, and maybe relevant to the argument you just previously heard, Crompton versus Houston casualty, the Utah Supreme Court has determined that in Utah, if you have more than one reasonable interpretation of a policy, you must apply the reasonable interpretation that results in the greatest coverage. And that's applicable here because we have offered a reasonable interpretation of even the however paragraph. In the limited context of non-renewal, it simply says the language that you provide notice as soon as practicable and you deem it as timely, that ends on the 61st day. And that's a reasonable interpretation of that language, which reconciles it with the insurance code, which is the way the policy must be read. Last point is, and their juxtaposition argument of, well, the however sentence comes immediately after the notice prejudice sentence, it's a decision they made. They drafted this policy, and under the insurance code, if they had put that at the end of that notice provision, I don't even think we would be having this argument. But they chose to insert it in that position, even though they have an obligation under the Utah insurance code to make sure that their policies are 100% fully in compliance with the statute. Unless there are any other questions. Thank you, counsel. Thank you. The case is submitted. Counsel are excused. Thank you.